**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN THE MATTER OF<br>THE SEARCH OF:<br><br>HISTORICAL CELL SITE DATA<br>ASSOCIATED WITH<br>THE CELLULAR TELEPHONE<br>ASSIGNED CALL NUMBER<br>412-510-6482<br>THAT IS STORED AT PREMISES<br>CONTROLLED BY VERIZON | Magistrate No. 21-2070 |

**AFFIDAVIT BY TELEPHONIC OR OTHER RELIABLE ELECTRONIC MEANS**
**IN SUPPORT OF APPLICATION FOR WARRANT TO SEARCH FOR AND**
**SEIZE EVIDENCE**

I, Matthew Patcher, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of a search warrant for the historical cell

site data associated with the cellular telephone assigned call number 412-510-6482 ("the

**Subject Phone**), that is stored at premises controlled by Verizon, a wireless telephone

service provider.

2.      This affidavit relates to an alleged bank robbery and a related attempted

bank robbery. As described below, a bank robbery occurred in Allegheny County and an

attempted bank robbery occurred in Washington County. The phone number that is the

focus of this affidavit belonged to a person who is alleged to have been driving a vehicle

that investigators have placed at the scene of both incidents during times that are relevant

to both incidents.

**3.**      Thus, in short, as explained in more detail below, I submit that probable cause exists to believe that information and evidence related to one or more violations of 18 U.S.C. § 2113(a) (bank robbery) will be found at the premises maintained by Verizon. I therefore request that the search warrant be issued to collect evidence of the same.

**4.**      The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

5.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since October 2012. I am currently assigned to the Pittsburgh Division of the FBI, working Violent Crime and Violent Crimes Against Children matters, to include bank robbery. Previously, I was assigned to the New York Division of the FBI where I was assigned to the Safe Streets Task Force, investigating street gangs and drug trafficking organizations. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 2510.

6.      During my career in law enforcement, I have personally conducted and participated in numerous federal drug trafficking, bank robbery, human trafficking, and child exploitation investigations, I have been involved in narcotics and child exploitation-related arrests and the execution of search warrants, and I have assisted in the supervision of activities of informants. Furthermore, I have participated in the investigation of numerous drug trafficking and human trafficking conspiracies, child exploitation cases, and cases involving the use of court-authorized disclosure of location data relating to cellular telephones.

## FACTS RELATING TO PROBABLE CAUSE

7.      On or about September 16, 2021, the Federal Bureau of Investigation Pittsburgh Field Office was notified of a robbery at Brentwood Bank, 3039 Washington Pike, Bridgeville, PA 15017, by the South Fayette Police Department. In sum and substance, the officers and/or witnesses reported that a black male wearing blue pants and a two-tone dark gray or black sweatshirt and black baseball cap entered the bank and handed the teller a note. The victim/teller advised that the note demanded $20,000. The victim/teller stated she was fearful for her safety, as the note mentioned not wanting to physically harm the victim/teller. In response to the note, the victim/teller, who is an identified individual that I am not naming herein in order to protect her identity, handed over approximately $4,000 in U.S. currency to the target, who was later identified as Anthony West. The subject fled the bank on foot and was seen on security footage entering the passenger side of a black sedan.

8.      While on scene at the Brentwood Bank your Affiant learned of an attempted bank robbery at the PNC Bank in South Strabane, Washington County. In sum and substance, a black male entered the bank with a demand note that was handed to the teller. The teller in question did not have any cash at their station. The black male turned and left the bank quickly. Your affiant viewed a surveillance photo from the attempted robbery in South Strabane. The individual depicted in the photo matched the description of the individual who robbed the Brentwood Bank.

9.      Security cameras at a business near the Brentwood Bank captured the individual who robbed the bank enter a black sedan. This same black sedan was seen on cameras located at intersections near the bank, which appeared to be fleeing the scene of the robbery. These cameras, particularly one(s) near intersections depicted a license plate as PA registration LHY-3395. Through a query of law enforcement databases, I am aware that this PA registration plate is associated with a black 2015 Chrysler 300 sedan (the Chrysler), which is registered to Anthony West at an address in the McKees Rocks area of Pittsburgh. I used a law enforcement database to view a driver's license photo for Mr. West.

10.     I tracked the Chrysler's movements to the vicinity of the Rivers Casino in Pittsburgh, PA through license plate readers. I contacted the Pennsylvania State Police (PSP) Rivers Casino detachment and requested assistance. PSP Rivers identified the CHRYSLER entering the casino grounds shortly after the robbery at Brentwood Bank. Through surveillance footage, PSP identified a black male who took off blue pants from his person and threw them in a trash can. PSP retrieved the pants and sent me a photo.

The pants resemble the pants worn during the commission of the robbery, to include a distinct white stripe down the legs (which were captured on video surveillance at the Brentwood Bank). PSP followed the subject who exited the passenger side of the Chrysler and discarded the pants with security cameras and sent me a photo of this subject. I then compared Mr. West's driver's license photo to the individual depicted in the security camera footage at the Rivers Casino (i.e., the subject who discarded the pants), and your Affiant identified that individual as Mr. West. PSP sent me an additional photo of the individual who exited the driver's side of the Chrysler. Your affiant identified the individual who exited the driver's side of the Chrysler as Brandin Gardner based on additional interactions with Mr. Gardner detailed below.

11.     Continuing on September 16, 2021, law enforcement established surveillance in the vicinity of the registered address for the Chrysler. Law enforcement positively identified Mr. West on the back porch of the TARGET ADDRESS. Mr. West entered the Chrysler with another black male later identified as Mr. Gardner. At this time, law enforcement attempted to conduct an investigative detention and activated their red and blue emergency lights and identified themselves as police. Mr. West ran from the Chrysler on foot and was detained some distance away. On his person at the time Mr. West was detained was a BLACK IPHONE XR. Mr. Gardner was detained inside the Chrysler by law enforcement pending further investigation. On Mr. Gardner's person was the BLACK IPHONE 11 with a cracked screen. This is the **Subject Phone**.

12.     Mr. West was transported to the FBI, was advised of Miranda warnings, and he expressed an understanding of the same. Mr. West then advised agents that he, in

fact, committed the robbery at the Brentwood Bank in South Fayette (described above) and that the money he obtained from the same would be found inside of the Chrysler. Mr. West also advised he attempted to rob the PNC Bank in South Strabane but was unsuccessful. Mr. West indicated that Mr. Gardner was the driver for the robbery and attempted robbery. Mr. West was charged via criminal complaint in this District with violation of Title 18 USC 2113(a) at Magistrate number 21-1893.

13.    Mr. Gardner was also transported to the FBI, advised of his Miranda warnings and expressed an understanding of the same. Mr. Gardner denied knowledge or participation in the robberies. Mr. Gardner also denied being with Mr. West in South Strabane or Bridgeville. Mr. Gardner denied driving the Chrysler during the time the robberies occurred. Mr. Gardner had driven the Chrysler at other times. Your Affiant knows many of these statements to be factually untrue based on surveillance footage or other evidence located during this investigation. In particular, PSP sent your Affiant footage that was captured by casino security cameras that showed a black male, later identified as Mr. Gardner exit the driver side of the Chrysler approximately 18 minutes after the Brentwood Bank robbery. I know it takes approximately 20 minutes to drive from the Brentwood bank to the Rivers Casino in ideal traffic conditions while driving on divided highways. This leaves no time for the Chrysler to have stopped and Mr. Gardner to have entered the driver's seat after the robbery occurred. Further, Mr. Gardner's denials are in direct conflict with statements given by Mr. West that implicated Mr. Gardner in the robbery and attempted robbery.

14.     I applied for and was granted a search warrant for the BLACK IPHONE

11 found in Mr. Gardner's possession (the **Subject Phone**) on the date of the robbery at

Magistrate number 21-1965. Pursuant to this search warrant, I identified a Subscriber

Identity Module (SIM) card that had printed on it an Integrated Circuit Card ID (ICCID)

89148000005515934222. I know an ICCID to be a unique number that can be utilized by

a cellular provider, like Verizon, to identify a phone number and/or subscriber.

Accordingly, I served Verizon with a Grand Jury Subpoena requesting, among other

things, the phone number and subscriber assigned to the ICCID ending in 34222. Verizon

responded the ICCID was assigned to Brandin Gardner utilizing telephone number

412-510-6482. Furthermore, Verizon's response included the fact this ICCID and

telephone number were last utilized in a BLACK IPHONE 11.

### TRAINING & EXPERIENCE REGARDING
### CELL PHONES & CELL TOWERS

15.     In my training and experience, I have learned that Verizon is a company

that provides cellular telephone access to the general public. I also know that providers of

cellular telephone service have technical capabilities that allow them to collect and

generate information about the locations of the cellular telephones to which they provide

service, including cell-site data, also known as "tower/face information" or "cell

tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers

covering specific geographic areas) that received a radio signal from the cellular

telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

telephone connected. These towers are often a half-mile or more apart, even in urban

areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

16.     Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the location of the cell phone found in Mr. Gardner's possession (the **Subject Phone**) during the times of the robbery and attempted robbery.

17.     Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This

information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## AUTHORIZATION REQUEST

18.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

19.     I further request that the Court direct Verizon to disclose to the Government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

*     *     *

The above information is true and correct to the best of my knowledge, information, and belief.

/s/ Matthew Patcher
_____
MATTHEW PATCHER
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me,
by telephone pursuant to
Fed. R. Crim. P. 4.1(b)(2)(A),
this 22nd day of October 2021.

_____
HONORABLE LISA PUPO LENIHAN
United States Magistrate Judge

**ATTACHMENT A**

***Property to be Searched***

1.      This warrant applies to records and information associated with the cellular telephone assigned call number 412-510-6482 ("the Account"), that are stored at premises controlled by Verizon ("the Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

**ATTACHMENT B**

***Items to be Seized***

**I.        Information to be disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for September 16, 2021.

1.    The following information about the customers or subscribers of the Account:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long distance telephone connection records;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h.  Means and source of payment for such service (including any credit card or bank account number) and billing records;

i.  Records and information, including photos, images, and videos, constituting, referencing, or revealing conspiracy to commit or the commission of bank robbery, images/videos as they relate to the crimes under investigation;

j.  Information, correspondence, communications, records, documents or other materials constituting evidence of bank robbery, or any information revealing a research, planning, or execution of a conspiracy to commit the referenced offenses, to include the identity of any of the individuals involved; and

k.  Records or documents evidencing occupancy or ownership of the Account, including utility and telephone bills, email or addressed correspondence.

2.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data.

**II.       Information to be seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 2113(a) involving Mr. Gardner on September 16, 2021. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.